**In re BENTLEY–RUSSELL, INC., Debtor.**

**Bankruptcy No. 91–10373 B.**

United States Bankruptcy Court, W.D. New York.

Oct. 4, 1996.

John H. Heyer, Trustee, Olean, NY.

J. Richardson Lippert II, Cash & Lippert, P.C., Franklinville, NY, for the Bieleckis.

Donald J. Swanz, Franklinville, NY, for Boehmer Transportation Company.

CARL L. BUCKI, Bankruptcy Judge.

The Chapter 7 trustee of Bentley–Russell, Inc., has objected to the allowance of four proofs of claim filed on behalf of the stockholders of the debtor corporation. With support from one of the unsecured creditors, the trustee proposes to reclassify the claims as equity. Specifically, the trustee and creditor contend that due to the undercapitalization of the business, the claims of stockholders must be equitably subordinated to those of all other creditors.

Jerome, Frances and Devereaux Bielecki purchased the stock of Bentley–Russell, Inc., from Paul and Wanda Russell in May of 1988. At the time of this acquisition, the Bielecki family made an initial investment totaling $50,000. It included four components: three loans to the corporation and a direct payment to the former owners of the debtor. The corporation used the first and second loans, respectively in the amounts of $10,000 and $8,486.75, to redeem all but three shares of the outstanding stock from Paul and Wanda Russell. As sole owners of the remaining stock, the Russells then conveyed one share to each of Jerome, Frances and Devereaux, in consideration of their payment of $6,513.25. Thus, by reason either of the stock redemption or the sale of the remaining shares, the Russells received cash payments totaling $25,000. The proceeds of the third loan, in the amount of an additional $25,000, were deposited into the debtor's operating account.

Subsequent to their acquisition of Bentley–Russell, Inc., the Bieleckis advanced additional moneys to or for the benefit of the corporation. Altogether, they now assert four claims against the debtor's estate. In claim 5, Jerome Bielecki seeks to recover $19,841.12, as the balance due on various loans and advances made after the stock purchase. Jerome then joins with his wife Frances to assert in claim 6 an entitlement of $34,930.56, as the balance due under the loans given to the corporation at the time of the stock acquisition. Filed respectively by Frances and Devereaux, claims 7 and 8 seek to recover $6,651,56 and $918.62 as the balances due for advances made subsequent to their respective purchases of single shares of corporate stock.

Boehmer Transportation Company, one of the creditors herein, has joined with the trustee to object to the allowance of the Bielecki claims. It contends that the Bieleckis had caused the debtor to be undercapitalized, and that that undercapitalization was responsible for the debtor's insolvency. The creditor alleges further that repayment of the Bielecki loans may have "shortchanged the corporation and brought about its demise." Under the present circumstances, it would disregard the corporate distinction as between the debtor and its principals. Citing *Pepper v. Litton*, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939), Boehmer's counsel urges that equitable considerations should compel this court to subordinate the Bielecki claims to those of all other unsecured creditors.

The subordination of claims has long been recognized as an appropriate exercise of the equitable powers of bankruptcy. *Id.* at 305, 60 S.Ct. at 244–45. Congress codified this principle in section 510(c) of the Bankruptcy Code. It provides that the Bankruptcy Court may "under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim...."

■ A primary advantage of incorporation is the flexibility that it provides for the raising of capital. In his classic treatise on the Law of Corporations, Professor Harry G. Henn has aptly observed that "[f]or no other form of business enterprise is there such a wide variety of types of securities—in almost limitless permutations and combinations—to fit almost every conceivable need." Harry G. Henn, Law of Corporations, § 70 (2nd ed. 1970). When provided by shareholders, "such financing may be by shares alone or by a combination of debt and shares." *Id.* at § 261, p. 518. Generally, shareholder loans are a fully legitimate method for financing corporate activity. A shareholder relation-

ship will not, therefore, by itself compel the subordination of debts owed to shareholders. Rather, subordination requires some "additional contributing factor." Collier on Bankruptcy, 15th edition, p. 510–12.

■ Equitable subordination appropriately applies to that claim which includes the two loans given to finance the redemption of stock from the former owners. Although the corporation's temporary receipt of funds might constitute a technical consideration, the essence of this transaction was of no benefit to the debtor. Prior to the loan and redemption, Mr. and Mrs. Russell owned 100 percent of the corporate stock. After the redemption, the Russells still owned 100 percent of the stock, although in the form of 72 fewer shares. To finance the redemption, however, the corporation had incurred new liabilities of $18,486.75. In exchange for assumption of this liability, therefore, the corporation retained nothing of benefit to the corporation as distinct from the benefit to its departing or prospective shareholders. For the Bieleckis, these transactions required no greater outlay than if they had directly purchased all of the pre-redemption shares for $25,000. Had it been financed from a cash surplus that exceeded the corporation's reasonable capitalization needs, the stock redemption would have entailed no consequences adverse to the claims of creditors. In this instance, however, the debtor funded the redemption exclusively from new indebtedness. This fact alone will support an inference that the debtor lacked sufficient surplus to finance the stock redemption. Nor have the Bieleckis rebutted this inference with evidence that the corporation was otherwise adequately capitalized.

When a corporation redeems stock from other than surplus funds, that redemption will diminish the working capital that the corporation may require to fulfill its ongoing obligations.[1] The effect of the present redemption was to give to the Bieleckis a claim for recovery of their capital investment and by so doing, to dilute the potential for recovery of unsecured claims. In essence, the Bieleckis caused the corporation to transform a capital investment into a debt obligation. The Bankruptcy Code recognizes the primacy of creditor claims over shareholder interests. See 11 U.S.C. § 726. Equity should not allow the Bieleckis to reap the benefit of measures designed to so countermand the normal distribution in bankruptcy. Rather, the claim of the Bieleckis shall be equitably subordinated to the extent needed to restore unsecured creditors to the same comparative position as if unsecured claims were not diluted by what in essence were moneys advanced as consideration for a stock purchase.

Jerome and Frances Bielecki received two notes for the loans used to finance the stock redemption. The first was for an original amount of $10,000 and has a current principal balance of $8,370.12. The second note was originally for $8,486.75., and presently has a principal balance of $5,635.32. Prior to its bankruptcy filing, the debtor had made payments of principal and interest totaling $4,591.04 on the first note, and $5,440 on the second note. Because the debtor would not have made these payments if the Bieleckis had structured their investment as a simple stock purchase, these payments also served to diminish the operating funds that would have been available for other unsecured creditors. Thus, unsecured claims were essentially diluted in the total amount of $24,036.48, this being the sum of the remaining principal balances on the two notes and all payments made on their account. Because claim 6 includes the claim for recovery of moneys due on these notes, that claim will be equitably subordinated for the amount of that dilution.

■ The balance of the Bielecki claims are either for moneys loaned to the corporation as working capital or for moneys actually expended for the debtor's benefit. The trustee and Boehmer Transportation Compa-

---

1. For this reason, the New York Business Corporation Law authorizes a corporation to purchase its own shares only from surplus. N.Y.Bus.Corp. § 513 (McKinney 1986). Although the parties offered no proof regarding the impact that the present redemption had on surplus as defined in section 102 of the Business Corporation Law, the concern of the statute is nonetheless implicated: that a stock redemption not be effected through means detrimental to the interests of unsecured creditors.

ny argue that because the corporation was undercapitalized, all claims of its principals should also be subordinated. Inadequacies of capitalization may justify subordination of any claims that account for that state of undercapitalization. For example, incorporating shareholders will suffer consequences for their use of debt obligations as a substitute for the investment of sufficient working capital to meet the reasonable financial requirements for the type of business which this corporation proposes to undertake. In the present instance, the Bieleckis did not form the debtor corporation, but acquired its stock from a prior owner. Except as already discussed in the context of the stock redemption, they did not cause the corporation's undercapitalization. Unless provided otherwise in the stock certificates or by agreement, a corporation cannot compel its shareholders to contribute additional equity. At the stage in which they acquired ownership of the debtor, the Bieleckis were under no obligation to make any further investment. If they chose to invest additional money, the Bieleckis were free to structure that investment in the form of either debt or equity. Having selected a fully legitimate option of investment, the Bieleckis may now share with other unsecured creditors a distribution on account of the balance of their claim. Under the present facts, the objectors have demonstrated no further basis for equitable subordination.

For the reasons set forth above, claims 5, 7, and 8 shall be allowed as filed. Claim 6 will be allowed as a general unsecured claim in the amount of $10,894.08, and as a subordinated claim in the amount of $24,036.48.

So ordered.